## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD, and CHRISTOPHER VALLE, | ) ) ) ) ) ) | Case No. 1:16 cv 6516 |
| Plaintiffs, | ) ) ) | **Trial by Jury Demanded** |
| v. | ) ) | |
| VILLAGE OF ROUND LAKE PARK, a municipal corporation, GEORGE FILENKO, in his individual capacity and in his official capacity as Chief of Police of the Village of Round Lake Park Police Department, DANIEL BURCH, in his individual capacity and in his official capacity as Deputy Chief of Police of the Village of Round Lake Park Police Department, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>COMPLAINT AT LAW</u>

NOW COMES Plaintiffs, HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD AND CHRISTOPHER VALLE (Collectively "Plaintiffs" or "Officers" or "Plaintiff Officers"), by and through their attorneys, D. Patterson Gloor, Phillip R. Nava, and Sarah K. Lickus of the Gloor Law Group LLC, and for their Complaint at Law against Defendants VILLAGE OF ROUND LAKE PARK, GEORGE FILENKO and DANIEL BURCH, state as follows:

## JURISDICTION

1.       This Complaint contains sixteen (16) counts.    Counts I, VI, XII arise under 42 U.S.C. §§ 1983 and jurisdiction of this Court for these counts is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.    The remaining counts arise under Illinois law and jurisdiction of this Court for these counts is permitted under supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and common law.

## PARTIES

2.       Plaintiff HECTOR LEPE is a 48 year-old male who resides in Chicago, Illinois. Plaintiff Lepe is employed by Defendant as a Commander with the Round Lake Park Police Department.

3.       Plaintiff DEIKY COLON is a 43 year-old male who resides in Niles, Illinois. Plaintiff Colon is employed by Defendant as a Commander with the Round Lake Park Police Department.

4.       Plaintiff DOMINICK IZZO is a 41 year-old male who resides in Hoffman Estates,, Illinois.  Plaintiff Izzo is employed by Defendant as an Officer with the Round Lake Park Police Department.

5.       Plaintiff MATTHEW T. LYONS is a 31 year-old male who resides in Buffalo Grove, Illinois.  Plaintiff Lyons is employed by Defendant as a Detective with the Round Lake Park Police Department.

6.       Plaintiff RANDY R. REUTER is a 59 year-old male who resides in Crystal Lake, Illinois.  Plaintiff Reuter is employed by Defendant as an Officer with the Round Lake Park Police Department.

7.     Plaintiff WAYMON VELA is a 52 year-old male who resides in Antioch, Illinois. Plaintiff Vela is employed by Defendant as an Officer with the Round Lake Park Police Department.

8.     Plaintiff WALTER RODRIGUEZ is a 29 year-old male who resides in Kenosha, Wisconsin. Plaintiff is employed by Defendant as an Officer with the Round Lake Park Police Department.

9.     Plaintiff, JOSEPH SEGRETI is a 61 year-old male who resides in Homer Glen, Illinois. Plaintiff Segreti is employed by Defendant as an Officer with the Round Lake Park Police Department.

10.    Plaintiff JONATHAN R. SHEPARD is a 28 year-old male who resides in Elburn, Illinois. Plaintiff Shepard is employed by Defendant as an Officer with the Round Lake Park Police Department.

11.    Plaintiff CHRISTOPHER VALLE is a 26 year-old male who resides in Elgin, Illinois. Plaintiff Valle is employed by Defendant as an Officer with the Round Lake Park Police Department.

12.    Defendant VILLAGE OF ROUND LAKE PARK ("the Village") is a municipal corporation organized under the laws and Constitution of the State of Illinois with a principal business address of Village Hall, 203 East Lake Shore Drive, Round Lake Park, Illinois.

13.    At all relevant times, the Village maintained and operated the Round Lake Park Police Department ("RLPPD") which operates out of 215 E. Main Street, Round Lake Park, Illinois.

14.    At all relevant times, Defendant GEORGE FILENKO was the Chief of Police for the RLLPD ("Chief Filenko").

15.     At all relevant times, Defendant DANIEL BURCH was the Deputy Chief of Police for the RLPPD ("Deputy Chief Burch"), and second in command to the Chief Filenko.

## FACTS COMMON TO ALL COUNTS

16.     Body-worn cameras ("BWCs") have gained popularity in recent years with law enforcement agencies across the country and have been marketed by various manufacturers as an enhanced evidentiary tool that will supplement the in-car video recording systems that most law enforcement agencies have already implemented.

17.     Indeed, some BWC manufacturer websites boast that an estimated seventy-two percent of law enforcement jurisdictions in the United States already utilize in-car video systems which has spawned the "rapid adoption and deployment of body-worn cameras throughout the nation" in an effort to integrate both video solutions so that officers can have the capability of strengthening case evidence through synchronized video from multiple vantage points.

18.     Following the trend, Deputy Chief Burch was charged by Chief Filenko with researching the various manufacturers of body worn cameras with the intention of acquiring BWCs for the RLPPD.  Ultimately, sometime in the summer of 2015, Defendant contracted with Texas-based manufacturer Enforcement Video, LLC d/b/a Watchguard Video to acquire VISTA Wearable Cameras body-worn cameras for use by the Plaintiff Officers.

19.     Upon receipt of the BWCs, Chief Filenko designated both himself and Deputy Chief Burch as BWC system administrators, affording them complete access to the BWC system control.[1]   Chief Filenko also charged Deputy Chief Burch with issuing and training the Plaintiff Officers how to use the BWCs.

---

[1]System administrator is defined as the person responsible for maintaining and running the network or system and managing the software, issues login access, maintains security and monitors the system.  (*See* Business Dictionary at http://www.businessdictionary.com/definition/system-administrator-sys-admin.html, last accessed May 27, 2016).

20.     Sometime in September 2015, the BWCs implemented into the RLPPD and issued to Plaintiff Officers for use on duty.     On September 8, 2015 Deputy Chief Burch conducted a two hour "training session" with the Plaintiff Officers which purported to cover the functionality of the BWCs and also to advise the Plaintiffs of the RLPPD's protocol and policy for their use.

21.     Specifically, during this September 8, 2015 training session, Deputy Chief Burch expressly told the Officers that they were in control of commencing and stopping a video recording and taught them how to do this using the BWC controls.     Burch advised the Officers they were to use BWC footage as part of their incident reports, evidence in court and other proceedings.     Deputy Chief Burch further advised the Officers that each Officer would have access to view their own BWC footage for use in reports.

22.     At the close of the training session Deputy Burch provided the Plaintiff Officers a manual on how to use the BWC's.     The manual provided to the Plaintiff Officers had no reference, discussion or illustration stating or indicating that the BWC's recorded video continuously while being worn.

23.     Prior to the sole training session, on September 1, 2015, Chief Filenko and Deputy Chief Burch created, drafted and issued General Order 2-14 titled "Body Worn Camera Systems" which delineated RLPPD's official policy regarding the use, management, storage and retrieval of audio visual media recorded by the BWCs (hereinafter "BWC Policy").

24.     The BWC Policy, under "Procedures" Section II, General Procedures, makes clear that Defendants had the responsibility to ensure the BWC equipment was properly installed and to adequately train the Officers.     Furthermore, it expressly states that only in regard to "incidents" recorded by the BWC do the Plaintiff Officers have no expectation of privacy:

A.  It shall be the <u>responsibility of the Department to ensure that the BWC equipment is properly installed according to the manufacturer's recommendations.</u>

B.  There is **no expectation of privacy for Department members** related to **incidents** recorded to BWCs.

\*\*\*

C.  It shall be the responsibility of the Round Lake Park Police Department to **ensure all officers are adequately trained** in the use and operation of the BWC equipment and applicable policies.

(emphasis added).

25.  Further, the BWC policy actually *required the Officers* themselves to activate their BWC to "record entire incidents" for virtually all calls, including routine, traffic and investigatory stops, foot pursuits, emergency driving situations and high risk situations and once the BWC was, the Officers were further *required* to keep the BWC recording on for the complete duration of the <u>incident</u> "to ensure that all events are properly documented". Upon the conclusion of each incident, the BWC policy stated that the Officer "must stop the video recording".

26.  Furthermore, Section VII of the BWC policy titled "Prohibited Recording" expressly states:

A. The BWC will **not be used to record**:

1.  **In locations where reasonable expectation of privacy exist**, such as dressing rooms, or restrooms, unless required for capturing evidence.

2.  **Sensitive exposure of private body parts**, unless required for capturing of evidence.

3.  **Personal activities or other Department members during routine, non-enforcement related activities.**

4.  Inside medical facilities, except when a situation arises that the member believes to serve a proper police purpose.

27.  Because of this specific language in the BWC Policy along with the training they received from Deputy Chief Burch, the Officers believed at all relevant times they were in

control of activating and stopping the video recording on their issued BWCs and further believed there would be no video recording during non-enforcement related activities where a reasonable expectation of privacy existed.

28.     Despite the official RLPPD BWC Policy, Chief Filenko and Deputy Chief Burch made the decision to depart from the BWC policy and knowingly and willfully allowed the unauthorized and prohibited BWC recordings of the Officers where a reasonable expectation of privacy existed and further viewed these videos as part of their daily duties.

29.     This decision to knowingly and willfully allow the unauthorized and prohibited recordings of Officers where a reasonable expectation of privacy existed constitutes a policy and practice of the Village instituted by its Chief of Police and Deputy Chief of Police.

30.     From September 2015 through May 2016, a period of approximately seven months, the Officers utilized their BWCs daily as they were trained to and in accordance with the BWC policy.

31.     During this time period, the Officers were only provided access to the RLPPD BWC system by Deputy Chief Burch and Chief Filenko to view the video footage that they took on their assigned BWCs when they activated the record button. These recordings were the only ones that they believe existed.

32.     During this time the Plaintiff Officers were never told, warned or advised by the Village, Deputy Chief Burch or Chief Filenko that their BWCs were in fact recording video non-stop even during non-enforcement related activities where a reasonable expectation of privacy existed.

33.     During this time period, the Officers reasonably relied and expected the Village, Chief Filenko and Deputy Chief Burch to ensure that BWC equipment was working so as not to violate the Officers' expectation of privacy.

34.     Being that the Officers were not aware the BWCs were recording everything from the moment the Officers attached the cameras to their uniform vests until they placed in the charging/download cradle, thousands of instances when the Officers had a reasonable expectation of privacy were recorded without consent during this seven month period.

35.     These highly offensive and voyeuristic intrusions, include, *inter alia*, the Officers being video recorded while:

        a.  defecating;

        b.  urinating;

        c.  exposing their genitals and buttocks;

        d.  naked and changing in the locker room area; and

        e.  performing other private and personal acts.

36.     During this seven month period, the Plaintiff Officers had been unaware these unconsented and unauthorized recordings were occurring until May 14, 2016. Upon realizing what had occurred and after viewing the available footage, the Officers were humiliated, embarrassed and greatly upset at the highly offensive and voyeuristic intrusion of their personal space.

37.     These unconsented and unauthorized recordings were discovered on May 14, 2016, when Officer Izzo entered the RLPPD to review paperwork, including review of his own BWC footage prior to commencing his tour, relieving Commander Colon and Officer Segreti.

38.     Officer Izzo specifically was looking for footage from his own BWC per direct order from Deputy Chief Burch who had asked Izzo to locate footage from the day before in order to complete an incident report.

39.     Officer Izzo walked up to the east terminal in the report writing room of the RLPPD to log on to the BWC system and noticed that the system was open already and that someone had already logged on. Officer Izzo then pulled up his name to begin searching for this particular footage when he became aware that (1) the system was logged on under Deputy Chief Burch; (2) the system displayed his and every other Officers BWC video footage; and (3) footage for his BWC was continuous, regardless of whether he had activated the BWC or not, and included footage recorded in "off mode", "sleep mode" and "activated mode". He also noted that the system showed an unusually large amount of BWC footage video files.

40.     Officer Izzo noticed that the unauthorized footage was recorded in seven minute increments continuously one right after the other without pause and the unauthorized footage files went back to at least February 2016.

41.     Upon realizing the unconsented recordings, Officer Izzo was shocked, upset and embarrassed at the video he observed during moments where he had a reasonable expectation of privacy including video footage while he was urinating and defecating.

42.     Realizing that the terminal he was using was logged in Deputy Chief Burch's account, Officer Izzo was extremely concerned that these recordings were intentional as it had been Deputy Chief Burch himself that advised the Officers that the only two persons who had full administrator access to the BWC system was Deputy Chief Burch and Chief Filenko.

43.     A normal part of Deputy Chief Burch and Chief Filenko's duties is to review the Officers' BWC videos for law enforcement matters, quality control and other supervisory

reasons. Both Chief Burch and Chief Filenko reviewed the Officers' BWC footage on a frequent basis, by remote means.

44.     In order to view the Officers' BWC video footage both Deputy Chief Burch and Chief Filenko used their system administrator access, which provided them access to the all of the BWC footage files for every Officer.

45.     Both Chief Filenko and Deputy Chief Burch were fully aware and cognizant that the unauthorized and unconsented videos were being recorded on the Officers BWCs. Yet, neither Deputy Chief Burch or Chief Filenko ever notified, warned or advised the Officers that this was occurring, nor did they correct or change the BWC system to stop these unauthorized and unconsented recordings.

46.     Izzo notified Plaintiff Colon of his observations. Plaintiff Colon drafted a memorandum the same day, May 14, 2016, to all of the Plaintiff Officers advising them of Izzo's discovery and advising them to protect their privacy by removing the BWCs from their vests when not on a call or handling Police matters. A copy of this memorandum was also sent to Chief Filenko and Deputy Chief Burch.

47.     Officer Izzo was advised by Plaintiff Officer Segreti that Deputy Chief Burch had ordered the restriction of access to the report writing room where the terminals were located. Segreti stated that Burch was on his way to "fix the problem".

48.     Officer Izzo contacted Round Lake Park Mayor Linda Lucassen, who he had already made aware of what he had discovered, to advise her of Deputy Chief Burch's intent to "fix the problem" and expressed concerns that Burch would delete all of the video files.

49.     After consulting with Chief Filenko, Deputy Chief Burch arrived a short time later immediately and unilaterally deleted all of the unconsented and unauthorized video footage

without any investigation. Chief Burch deleted the footage in the presence of Plaintiff Segreti, who was on duty at the time.

50.    The Illinois State "Law Enforcement Officer-Worn Body Camera Act" ("the Body-Worn Camera Act") regulates and governs the use of Body-Worn Cameras for all Illinois Law Enforcement Agencies such as RLPPD, states in pertinent part:

> (7) Recordings made by officer-worn cameras must be retained by the law enforcement agency or by the camera vendor used by the agency, on a recording medium for a period of 90 days.
>
> (A) Under no circumstances shall *any* recording made with an officer-worn body camera be altered, **erased**, or **destroyed** prior to the expiration of the 90-day storage period.
>
> 50 ILCS 706/10-20 (7)(A) with emphasis.

51.    Per the Body-Worn Camera Act, under no circumstances may any recording made by BWCs be erased prior to the expiration of the mandated 90-day storage period. Accordingly, by deleting all of the unconsented and unauthorized videos from the Officers' BWCs on May 14, 2016, Defendant, through the actions of violated the Body-Worn Camera Act.

52.    As a direct and proximate result of the conduct of the Village, Chief Filenko and Deputy Chief Burch, the Officers have suffered a highly offensive, intrusive, serious and unreasonable violation of their personal privacy which has caused them to suffer great anguish, shame, anger, severe emotional distress, humiliation, and feeling of being violated.

### COUNT I
**(Civil Rights Act of 1871 – § 1983 Violation)**

53.    Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraph 1 through 52, inclusive as though fully set forth herein.

54.     The Fourth and Fourteenth Amendments of the United States Constitution guarantee the Plaintiffs the right from unreasonable intrusion into their person where there is a legitimate expectation of privacy.

55.     Defendant Village, through the conduct of its Chief of Police and Deputy Chief of Police, had complete control and system access of the RLPPD BWC equipment and knowingly and intentionally permitted the BWCs to record video footage of the Plaintiff Officers during personal and private (non-police) matters without consent.

56.     These wrongful, unauthorized video recordings of the Officers by the Village, through the conduct of its Chief of Police and Deputy Chief of Police, are in direct violation of the Village's own policy regarding the BWCs which provides that that no recording will be made where Officers have an expectation of privacy.

57.     Despite the BWC Policy, the Village, through the conduct of Chief Filenko and Deputy Chief Burch, made the decision to depart from the BWC policy and knowingly and willfully allowed the unauthorized and unconsented BWC recordings of the Officers where a reasonable expectation of privacy existed.

58.     This decision to knowingly and willfully allow the unauthorized and prohibited recordings of Officers where a reasonable expectation of privacy existed constitutes a policy and practice of the Village within the meaning of the Civil Rights Act of 1871, 42 U.S.C. § 1983, in that, the daily unauthorized and unconsented recordings instituted by its Chief of Police and Deputy Chief of Police through the use of the BWC system which was purchased and installed by the Village.

59.     The Village's warrantless recordings of the Plaintiffs' during private, non-police moments where a reasonable expectation of privacy existed constitutes a violation of the Plaintiffs' rights under the Fourth and Fourteenth Amendments.

60.     Pursuant to 42 U.S.C. § 1983, the Village is liable to the Plaintiffs' for civil damages and other relief, including reasonable attorneys' fees and costs for the violation of their constitutional rights.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant VILLAGE OF ROUND LAKE PARK as follows:

a) Damages for each individual plaintiff as permitted under 28 U.S.C. §1983 and in an amount in excess of $100,000,

b) An award of Plaintiffs' reasonable attorneys' fees and costs herein pursuant to 28 U.S.C. § 1988,

c) For such other and further relief as this Court deems just and equitable.

## COUNT II
### (VIOLATION OF PRIVACY – INTRUSION UPON SECLUSION)

61.     Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraph 1 through 52, inclusive as though fully set forth herein.

62.     Defendant Village, through the conduct of its Chief of Police and Deputy Chief of Police, had complete control and system access of the RLPPD BWC equipment and knowingly and intentionally permitted the BWCs to record video footage of the Plaintiff Officers during personal and private (non-police) matters without consent.

63.     Defendant Village knowingly and with a conscious and reckless disregard for Plaintiff's privacy rights permitted and allowed this unauthorized and unconsented recording to take place in order to wrongfully observe and scrutinize the activities of the Officers.

64.     These wrongful, unauthorized video recordings of the Officers by the Village are in direct violation of the Village's own policy regarding the BWCs which provides that that no recording will be made where Officers have an expectation of privacy.

65.     The wrongful, unauthorized recordings of the Officers in non-police matters included situations any reasonable person would find highly offensive including videos of Officers while urinating, videos of Officers defecating in the toilet and other instances where their expectation of privacy is extremely high.

66.     The intrusions by the Village were specific to Plaintiffs' person and private matters.

67.     As a direct and proximate cause of the intrusion of seclusion and invasion of privacy by the Village, Plaintiff Officers have been caused to suffer great anguish, shame, anger, severe emotional distress, humiliation and feeling of being violated.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant VILLAGE OF ROUND LAKE PARK, in an amount to be determined by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action.

## COUNT III
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

68.     Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 52, inclusive as though fully set forth herein.

69.     The Village made the decision to acquire BWCs from a third party vendor and implement them for use for the Officers in the RLPPD. The Plaintiff Officers were not involved in any aspect of selecting the BWC vendor or consummating the transaction to purchase the BWCs and did not have any direct contact with the BWC vendor about the BWC system or equipment. Further, the Officers, at all times relevant, never had or were given system administrator access to the BWC system. The Village, through the conduct of its Chief of Police and Deputy Chief of Police and per its own BWC policy, was responsible to implement, install, introduce, maintain, control and train the Officers on the features, functionality and protocol for using the BWCs.

70.     The Plaintiff Officers fully relied on the representations made by the Village, through communications from its Chief of Police and Deputy Chief of Police with respect to the features and functionality of the BWCs and based on these representations, the Officers fully believed their right to privacy was protected when they were engaged in personal, private, non-police matters.

71.     The Village's Chief of Police and Deputy Chief of Police were the only ones that had full system administrator access to all the recordings and engaged in daily reviewing of Officer BWC footage. Thus, the Village was fully aware of these unauthorized and unconsented video recordings were taking place, yet the Village never notified the Officers.

72.     Such conduct is reprehensible, extreme and highly offensive as well as a clear violation of the Officers' privacy rights especially considering the recordings included videos of

15

Officers' genitalia, videos of Officers defecating in the toilet, changing clothes and other instances where their reasonable expectation of privacy is extremely high.

73.     The Village knew that there was a high probability that permitting the unconsented continual recording of the BWCs while on the Officers' person would inflict severe emotional distress upon the Plaintiffs.

74.     As a direct and proximate cause of the wrongful conduct by the Village's wrongful conduct in permitting the unconsented video recordings, Plaintiff Officers have been caused to suffer great anguish, shame, anger, severe emotional distress, humiliation, feeling of being violated and injury to their right to privacy.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant VILLAGE OF ROUND LAKE PARK, in an amount to be determined by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action.

## COUNT IV
## (VIOLATION OF ILLINOIS CONSTITUTION)

75.     Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 52, inclusive as though fully set forth herein.

76.     The Officers' right to privacy is guaranteed protection by Article 1, Section 6 and 12 of the Constitution of the State of Illinois which states:

> **The people shall have the right to be secure in their persons**, houses, papers and other possessions **against unreasonable** searches, seizures, **invasions of privacy** or interceptions of communications by eavesdropping devices or other means. No Warrant shall issue without

probably cause, supported by affidavit particularly describing the place to be searched and the person or things to be seized.

***

**Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person,** **privacy,** property or reputation. He shall obtain justice by law, freely, completely, and promptly.

Illinois Constitution, Article I, Section 6, Section 12.

77. The wrongful, unauthorized video recordings of the Officers in personal and private moments, as a result of the conduct by the Village, through its Chief of Police and its Deputy Chief of Police, is a direct violation of the Officers' guaranteed right against unreasonable invasions of privacy, a right that is protected by the Constitution of the State of Illinois.

78. As a direct and proximate cause of the conduct by the Village in permitting the unconsented video recordings, Plaintiffs have been caused to suffer great anguish, shame, anger, severe emotional distress, humiliation, feeling of being violated and injury to their right to privacy.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant VILLAGE OF ROUND LAKE PARK, in an amount to be determined by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action.

## COUNT V
## (SPOLIATION OF EVIDENCE)

79.     Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 52, inclusive as though fully set forth herein.

80.     The Village, through its Chief of Police and its Deputy Chief of Police, knew that highly offensive intrusions to the Officers' right to privacy had been occurring by virtue of daily review of the Officers' BWC footage as part of the duties of its Chief of Police and Deputy Chief of Police.

81.     The Body-Worn Camera Act (50 ILCS 706/10-20 (7)(A)) regulates and governs the use of Body-Worn Cameras for all Illinois Law Enforcement Agencies such as RLPPD. The Body-Worn Camera Act expressly states that all recordings made by officer-worn cameras must be retained by law enforcement agencies, including RLPPD, for a period of 90 days.

82.     Further the Body-Worn Camera Act expressly prohibits any Illinois law enforcement agency from erasing or destroying any recording made by officer-worn cameras (e.g., BWCs) prior to expiration of the 90-day storage period.

83.     Under the Body-Worn Camera Act, the Village was under a legal duty and obligation to preserve all recordings made by the RLPPD BWCs for at least 90 days. This was mandatory without exceptions.[2]

84.     On May 14, 2016, upon becoming aware that the Plaintiff Officers had discovered their BWCs had been recording continuously without consent or authorization during their private and personal moments, the Village, through the actions of its Chief of Police and Deputy Chief of Police, intentionally deleted all of the unconsented and unauthorized videos from the RLPPD BWC system.

_____

[2] Additionally, on May 16, 2016, a letter to Defendant was sent certified mail putting them on notice of potential litigation and requesting they preserve all evidence relating to the Officers BWC unauthorized recordings.

85. The Village, through the actions of its Chief of Police and Deputy Chief of Police, intentionally failed to preserve the RLPPD recordings for at least 90 days as required by the Body-Worn Camera Act. This deletion of the BWC recordings is a blatant breach of the duty imposed on the Village pursuant to the Body-Worn Camera Act.

86. The loss and destruction by the Village of the unauthorized and unconsented recordings from the RLPPD BWCs, has directly and proximately impaired Plaintiffs' ability to prove their lawsuit against Defendants.

87. As a direct and proximate result of the loss of evidence, the Plaintiffs' ability to prove their lawsuit against the Village has been severely compromised.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant VILLAGE OF ROUND LAKE PARK, in an amount to be determined by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action, sanctions and any other relief this Court deems proper.

## COUNT VI
### (Civil Rights Act of 1871 – § 1983 Violation)

88. Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraph 1 through 52, inclusive as though fully set forth herein.

89. The Fourth and Fourteenth Amendments of the United States Constitution guarantee the Plaintiffs the right from unreasonable intrusion into their person where there is a legitimate expectation of privacy.

90.     Chief Filenko acted under the color of state law when he knowingly and intentionally permitted the BWCs to record video footage of the Plaintiff Officers during personal and private (non-police) matters without their consent.

91.     These wrongful, unauthorized video recordings of the Officers by Chief Filenko are in direct violation of the Village's own policy regarding the BWCs which provides that no recording will be made where Officers have an expectation of privacy.

92.     Despite the Village's BWC Policy, Chief Filenko made the decision to depart from the Village's BWC policy and knowingly and willfully allowed the unauthorized and unconsented BWC video recordings of the Officers where a reasonable expectation of privacy existed and viewed these videos as part of his daily duties.

93.     Chief Filenko's warrantless recordings of the Plaintiffs' during private, non-police moments where a reasonable expectation of privacy existed constitutes a violation of the Plaintiffs' rights under the Fourth and Fourteenth Amendments.

94.     Pursuant to 42 U.S.C. § 1983, Chief Filenko is liable to the Plaintiffs' for civil damages and other relief, including reasonable attorneys' fees and costs for the violation of their constitutional rights.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant GEORGE FILENKO as follows:

d)  Damages for each individual plaintiff as permitted under 28 U.S.C. § 1983 and in an amount in excess of $100,000,

e)  An award of Plaintiffs' reasonable attorneys' fees and costs herein pursuant to 28 U.S.C. § 1988,

f) For such other and further relief as this Court deems just and equitable.

## COUNT VII
### (VIOLATION OF PRIVACY – INTRUSION UPON SECLUSION)

95.     Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraph 1 through 52, inclusive as though fully set forth herein.

96.     Chief Filenko had complete control and system access of the RLPPD BWC equipment and knowingly and intentionally permitted the BWCs to record video footage of the Plaintiff Officers during personal and private (non-police) matters without consent.

97.     Chief Filenko knowingly and with a conscious and reckless disregard for Plaintiff's privacy rights permitted and allowed this unauthorized and unconsented recording to take place in order to wrongfully observe and scrutinize the activities of the Officers.

98.     These wrongful, unauthorized video recordings of the Officers by Chief Filenko are in direct violation of the Village's own policy regarding the BWCs which provides that that no recording will be made where Officers have an expectation of privacy.

99.     The wrongful, unauthorized recordings of the Officers in non-police matters included situations any reasonable person would find highly offensive including videos of Officers genitalia, videos of Officers defecating in the toilet and other instances where their expectation of privacy is extremely high.

100.     The intrusions by Chief Filenko were specific to Plaintiffs' person and private matters.

101.     As a direct and proximate cause of the intrusion of seclusion and invasion of privacy by Chief Filenko, Plaintiff Officers have been caused to suffer great anguish, shame, anger, severe emotional distress, humiliation and feeling of being violated.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant GEORGE FILENKO, in an amount to be determined by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action.

## COUNT VIII
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

102.     Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 52, inclusive as though fully set forth herein.

103.     The Village made the decision to acquire BWCs from a third party vendor and implement them for use for the Officers in the RLPPD. The Plaintiff Officers were not involved in any aspect of selecting the BWC vendor or consummating the transaction to purchase the BWCs and did not have any direct contact with the BWC vendor about the BWC system or equipment. Further, the Officers, at all times relevant, never had or were given system administrator access to the BWC system.     Chief Filenko, per the RLPPD BWC policy, was responsible to implement, install, introduce, maintain, control and train the Officers on the features, functionality and protocol for using the BWCs.

104.     The Plaintiff Officers fully relied on the representations made by Chief Filenko, with respect to the features and functionality of the BWCs and based on these representations, the Officers fully believed their right to privacy was protected when they were engaged in personal, private, non-police matters.

105.     Chief Filenko and Deputy Chief Burch were the only persons that had full system administrator access to all the recordings and engaged in daily reviewing of Officer BWC

footage. Thus, Chief Filenko was fully aware of these unauthorized and unconsented video recordings were taking place, yet he never notified the Officers.

106.    Such conduct is reprehensible, extreme and highly offensive as well as a clear violation of the Officers' privacy rights especially considering the recordings included videos of Officers' genitalia, videos of Officers defecating in the toilet, changing clothes and other instances where their reasonable expectation of privacy is extremely high.

107.    Chief Filenko knew or should have known that there was a high probability that permitting the unconsented continual recording of the BWCs while on the Officers' person would inflict severe emotional distress upon the Plaintiffs.

108.    As a direct and proximate cause of the wrongful conduct by the Chief Filenko's wrongful conduct in permitting the unconsented video recordings, Plaintiff Officers have been caused to suffer great anguish, shame, anger, severe emotional distress, humiliation, feeling of being violated and injury to their right to privacy.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant GEORGE FILENKO, in an amount to be determined by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action.

## COUNT IX
### (VIOLATION OF ILLINOIS CONSTITUTION)

109.    Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 52, inclusive as though fully set forth herein.

110. The Officers' right to privacy is guaranteed protection by Article 1, Section 6 and

12 of the Constitution of the State of Illinois which states:

> **The people shall have the right to be secure in their persons**, houses, papers and other possessions **against unreasonable** searches, seizures, **invasions of privacy** or interceptions of communications by eavesdropping devices or other means. No Warrant shall issue without probably cause, supported by affidavit particularly describing the place to be searched and the person or things to be seized.

***

> **Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy,** property or reputation. He shall obtain justice by law, freely, completely, and promptly.

> Illinois Constitution, Article I, Section 6, Section 12.

111. The wrongful, unauthorized video recordings of the Officers in personal and

private moments by Chief Filenko is a direct violation of the Officers' guaranteed right against

unreasonable invasions of privacy, a right that is protected by the Constitution of the State of

Illinois.

112. As a direct and proximate cause of the conduct by Chief Filenko in permitting the

unconsented video recordings, Plaintiffs have been caused to suffer great anguish, shame, anger,

severe emotional distress, humiliation, feeling of being violated and injury to their right to

privacy.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO,

MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ,

JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for

judgment in their favor and against Defendant GEORGE FILENKO, in an amount to be

determined by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action.

## COUNT X
## (SPOLIATION OF EVIDENCE)

113.    Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 52, inclusive as though fully set forth herein.

114.    Chief Filenko knew that highly offensive intrusions to the Officers' right to privacy had been occurring by virtue of his daily review of the Officers' BWC footage as part of his duties as the RLPPD Chief of Police.

115.    The Body-Worn Camera Act (50 ILCS 706/10-20 (7)(A)) regulates and governs the use of Body-Worn Cameras for all Illinois Law Enforcement Agencies such as RLPPD. The Body-Worn Camera Act expressly states that all recordings made by officer-worn cameras must be retained by law enforcement agencies, including RLPPD, for a period of 90 days.

116.    Further the Body-Worn Camera Act expressly prohibits any Illinois law enforcement agency from erasing or destroying any recording made by officer-worn cameras (e.g., BWCs) prior to expiration of the 90-day storage period.

117.    Under the Body-Worn Camera Act, Chief Filenko was under a legal duty and obligation to preserve all recordings made by the RLPPD BWCs for at least 90 days. This was mandatory without exceptions.

118.    On May 14, 2016, when Chief Filenko became aware that the unconsented and unauthorized footage had been discovered by the Officers, he deleted or ordered their deletion immediately without investigation.

119.     Chief Filenko intentionally failed to preserve the RLPPD recordings for at least 90 days as required by the Body-Worn Camera Act.  This deletion of the BWC recordings is a blatant breach of the duty imposed on Chief Filenko pursuant to the Body-Worn Camera Act.

120.     The loss and destruction by Chief Filenko of the unauthorized and unconsented recordings from the RLPPD BWCs, has directly and proximately impaired Plaintiffs' ability to prove their lawsuit against Defendants.

121.     As a direct and proximate result of the loss of evidence, the Plaintiffs' ability to prove their lawsuit against Defendants has been severely compromised.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant GEORGE FILENKO, in an amount to be determined by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action, sanctions and any other relief this Court deems proper.

## COUNT XII
### (Civil Rights Act of 1871 – § 1983 Violation)

122.     Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraph 1 through 52, inclusive as though fully set forth herein.

123.     The Fourth and Fourteenth Amendments of the United States Constitution guarantee the Plaintiffs the right from unreasonable intrusion into their person where there is a legitimate expectation of privacy.

124. Deputy Chief Burch acted under the color of state law when he knowingly and intentionally permitted the BWCs to record video footage of the Plaintiff Officers during personal and private (non-police) matters without their consent.

125. These wrongful, unauthorized video recordings of the Officers by Deputy Chief Burch are in direct violation of the Village's own policy regarding the BWCs which provides that that no recording will be made where Officers have an expectation of privacy.

126. Despite the Village's BWC Policy, Deputy Chief Burch made the decision to depart from the Village's BWC policy and knowingly and willfully allowed the unauthorized and unconsented BWC video recordings of the Officers where a reasonable expectation of privacy existed and viewed these videos as part of his daily duties.

127. Deputy Chief Burch's warrantless recordings of the Plaintiffs' during private, non-police moments where a reasonable expectation of privacy existed constitutes a violation of the Plaintiffs' rights under the Fourth and Fourteenth Amendments.

128. Pursuant to 42 U.S.C. § 1983, Deputy Chief Burch is liable to the Plaintiffs' for civil damages and other relief, including reasonable attorneys' fees and costs for the violation of their constitutional rights.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant DANIEL BURCH as follows:

   a) Damages for each individual plaintiff as permitted under 28 U.S.C. § 1983 and in an amount in excess of $100,000,

   b) An award of Plaintiffs' reasonable attorneys' fees and costs herein pursuant to 28 U.S.C. § 1988,

c)  For such other and further relief as this Court deems just and equitable.

## COUNT XIII
## (VIOLATION OF PRIVACY – INTRUSION UPON SECLUSION)

129.    Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraph 1 through 52, inclusive as though fully set forth herein.

130.    Deputy Chief Burch had complete control and system access of the RLPPD BWC equipment and knowingly and intentionally permitted the BWCs to record video footage of the Plaintiff Officers during personal and private (non-police) matters without consent.

131.    Deputy Chief Burch knowingly and with a conscious and reckless disregard for Plaintiff's privacy rights permitted and allowed this unauthorized and unconsented recording to take place in order to wrongfully observe and scrutinize the activities of the Officers.

132.    These wrongful, unauthorized video recordings of the Officers by Deputy Chief Burch are in direct violation of the Village's own policy regarding the BWCs which provides that that no recording will be made where Officers have an expectation of privacy.

133.    The wrongful, unauthorized recordings of the Officers in non-police matters included situations any reasonable person would find highly offensive including videos of Officers genitalia, videos of Officers defecating in the toilet and other instances where their expectation of privacy is extremely high.

134.    The intrusions by Deputy Chief Burch were specific to Plaintiffs' person and private matters.

135.    As a direct and proximate cause of the intrusion of seclusion and invasion of privacy by Deputy Chief Burch, Plaintiff Officers have been caused to suffer great anguish, shame, anger, severe emotional distress, humiliation and feeling of being violated.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant DANIEL BURCH, in an amount to be determined by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action.

## COUNT XIV
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

136.    Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 52, inclusive as though fully set forth herein.

137.    The Village made the decision to acquire BWCs from a third party vendor and implement them for use for the Officers in the RLPPD. The Plaintiff Officers were not involved in any aspect of selecting the BWC vendor or consummating the transaction to purchase the BWCs and did not have any direct contact with the BWC vendor about the BWC system or equipment. Further, the Officers, at all times relevant, never had or were given system administrator access to the BWC system.    Deputy Chief Burch, per the RLPPD BWC policy, was responsible to implement, install, introduce, maintain, control and train the Officers on the features, functionality and protocol for using the BWCs.

138.    The Plaintiff Officers fully relied on the representations made by Deputy Chief Burch, with respect to the features and functionality of the BWCs and based on these representations, the Officers fully believed their right to privacy was protected when they were engaged in personal, private, non-police matters.

139.    Deputy Chief Burch and Chief Filenko were the only persons that had full system administrator access to all the recordings and engaged in daily reviewing of Officer BWC

footage. Thus, Deputy Chief Burch was fully aware of these unauthorized and unconsented video recordings were taking place, yet he never notified the Officers.

140. Such conduct is reprehensible, extreme and highly offensive as well as a clear violation of the Officers' privacy rights especially considering the recordings included videos of Officers' genitalia, videos of Officers defecating in the toilet, changing clothes and other instances where their reasonable expectation of privacy is extremely high.

141. Deputy Chief Burch knew or should have known that there was a high probability that permitting the unconsented continual recording of the BWCs while on the Officers' person would inflict severe emotional distress upon the Plaintiffs.

142. As a direct and proximate cause of the wrongful conduct by the Deputy Chief Burch's wrongful conduct in permitting the unconsented video recordings, Plaintiff Officers have been caused to suffer great anguish, shame, anger, severe emotional distress, humiliation, feeling of being violated and injury to their right to privacy.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant DANIEL BURCH, in an amount to be determined by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action.

## COUNT XV
## (VIOLATION OF ILLINOIS CONSTITUTION)

143. Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 52, inclusive as though fully set forth herein.

144.    The Officers' right to privacy is guaranteed protection by Article 1, Section 6 and 12 of the Constitution of the State of Illinois which states:

> **The people shall have the right to be secure in their persons**, houses, papers and other possessions **against unreasonable** searches, seizures, **invasions of privacy** or interceptions of communications by eavesdropping devices or other means. No Warrant shall issue without probably cause, supported by affidavit particularly describing the place to be searched and the person or things to be seized.
>
> ***
>
> **Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person**, **privacy**, property or reputation.    He shall obtain justice by law, freely, completely, and promptly.
>
> Illinois Constitution, Article I, Section 6, Section 12.

145.    The wrongful, unauthorized video recordings of the Officers in personal and private moments by Deputy Chief Burch is a direct violation of the Officers' guaranteed right against unreasonable invasions of privacy, a right that is protected by the Constitution of the State of Illinois.

146.    As a direct and proximate cause of the conduct by Deputy Chief Burch in permitting the unconsented video recordings, Plaintiffs have been caused to suffer great anguish, shame, anger, severe emotional distress, humiliation, feeling of being violated and injury to their right to privacy.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant DANIEL BURCH, in an amount to be determined

by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action.

**COUNT XVI**
**(SPOLIATION OF EVIDENCE)**

147.    Plaintiffs adopt, repeat, reallege, and incorporate each and every allegation contained in Paragraphs 1 through 52, inclusive as though fully set forth herein.

148.    Deputy Chief Burch knew that highly offensive intrusions to the Officers' right to privacy had been occurring by virtue of his daily review of the Officers' BWC footage as part of his duties as the RLPPD Deputy Chief of Police.

149.    The Body-Worn Camera Act (50 ILCS 706/10-20 (7)(A)) regulates and governs the use of Body-Worn Cameras for all Illinois Law Enforcement Agencies such as RLPPD.  The Body-Worn Camera Act expressly states that <u>all recordings</u> made by officer-worn cameras must be retained by law enforcement agencies, including RLPPD, for a period of 90 days.

150.    Further the Body-Worn Camera Act expressly prohibits any Illinois law enforcement agency from erasing or destroying any recording made by officer-worn cameras (e.g., BWCs) prior to expiration of the 90-day storage period.

151.    Under the Body-Worn Camera Act, Deputy Chief Burch was under a legal duty and obligation to preserve all recordings made by the RLPPD BWCs for at least 90 days.   This was mandatory without exceptions.

152.    On May 14, 2016, when Deputy Chief Burch became aware that the unconsented and unauthorized footage had been discovered by the Officers, he deleted them immediately without investigation.

153.    Deputy Chief Burch intentionally failed to preserve the RLPPD recordings for at least 90 days as required by the Body-Worn Camera Act.  This deletion of the BWC recordings

is a blatant breach of the duty imposed on Deputy Chief Burch pursuant to the Body-Worn Camera Act.

154.     The loss and destruction by Deputy Chief Burch of the unauthorized and unconsented recordings from the RLPPD BWCs, has directly and proximately impaired Plaintiffs' ability to prove their lawsuit against Defendants.

155.     As a direct and proximate result of the loss of evidence, the Plaintiffs' ability to prove their lawsuit against Defendants has been severely compromised.

WHEREFORE, Plaintiffs HECTOR LEPE, DEIKY COLON, DOMINICK IZZO, MATTHEW T. LYONS, RANDY R. REUTER, WAYMON VELA, WALTER RODRIGUEZ, JOSEPH SEGRETI, JONATHAN R. SHEPARD and CHRISTOPHER VALLE, pray for judgment in their favor and against Defendant DANIEL BURCH, in an amount to be determined by a trier of fact, in excess of $100,000 for each individual, plus interest as provided by law and reasonable attorneys' fees and costs of this action, sanctions and any other relief this Court deems proper.

### JURY DEMAND

Plaintiff Officers hereby demand trial by jury on all counts.

Respectfully Submitted,

GLOOR LAW GROUP, LLC


//s/  Phillip R. Nava_____
Attorneys for Plaintiffs


D. Patterson Gloor ARDC#6192017
Phillip Ruben Nava ARDC#6304955
Sarah K. Lickus ARDC#6301796
GLOOR LAW GROUP, LLC
225 W. Wacker Drive, Suite 1800
Chicago, Illinois 60606
312/752-3752 (Phone)
6868980